RENDERED:  AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2018-CA-001268-MR
AND 2018-CA-001293-MR

ROBERT PAUL ORBANK                    APPELLANT/CROSS-APPELLEE


APPEAL AND CROSS-APPEAL FROM MADISON FAMILY COURT
v.          HONORABLE KIMBERLY BLAIR WALSON, JUDGE
ACTION NO. 14-CI-50335


NANCY ELIZABETH ORBANK          APPELLEE/CROSS-APPELLANT


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, LAMBERT, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Robert Paul Orbank (Bob) and Nancy Elizabeth

Orbank have filed appeals against each other regarding the Madison Family

Court's findings of fact, conclusions of law, and decree of dissolution, specifically

disagreeing in how the $119,000[1] proceeds from the sale of the marital house were awarded. Bob argues that the family court erred in only granting him $90,000 of the proceeds as his nonmarital property rather than all of it, while Nancy argues that Bob did not adequately trace his previous nonmarital property, and it all became marital property which should have been divided equally between them.

In 1996, Bob divorced his first wife, Julianne Orbank, in Illinois. Bob was awarded their marital residence on Limb Court in the divorce, which was valued at $180,000. He was ordered to pay Julianne $90,000 for her half. To pay her, Bob encumbered the property with a $110,000 mortgage.

Bob and Nancy married in June 1997 in Illinois. Bob and Nancy lived in the Limb Court home and continued to make payments on the mortgage and then took out a second mortgage to make improvements to it.

In 2002, Bob and Nancy purchased twenty-three acres on Locust Hill Road in Waco, Kentucky for $75,000. This consisted of a $50,000 down payment and a $25,000 promissory note. They planned to build a residence on this property and obtained a $250,000 construction loan.

---

[1] The actual figure was $119,804.85. To make it easier to discuss the funds at issue, we will refer to them with the same approximations that the family court and parties typically discussed them, even if these are not exact rounded amounts.

In 2002 and 2003, Bob received an inheritance from the Grace Haymond Estate totaling about $49,000[2] which was deposited into their joint checking account. Bob testified in his deposition that $39,000 of that was used toward constructing the home while Nancy testified in her deposition that she did not know how that money, which was deposited into their joint checking account, was used.

Bob and Nancy also received approximately $180,000[3] from Bob's mother, Ann Orbank, in the form of checks that Bob wrote from his mother's checking account.[4] Nancy testified in her deposition that the arrangements for this money were made between Bob and Ann. Bob and Nancy consistently testified that the $180,000 was a loan but they would only have to pay Ann back if she needed the money for medical expenses. They also testified that this money went into the construction of the Locust Hill house.

In 2005, Bob and Nancy moved into their Locust Hill residence and sold the Limb Court property resulting in proceeds of $149,000[5] which were

---

[2] The actual figure was $49,121.13.

[3] The actual figure is $181,616.35.

[4] The parties acknowledged that Ann previously jointly loaned them $70,000 which she later forgave as a gift. The parties both acknowledge this $70,000 was a marital gift and it is not at issue in the dissolution.

[5] The actual figure is $149,836.04.

deposited into their joint checking account. Shortly after receiving these proceeds, the parties purchased a certificate of deposit (CD) for $100,000. Because Nancy could not find employment immediately after moving to Kentucky, she cashed out $40,000 from a 401(k) to pay bills for the house, living expenses, and landscaping.

Bob's mother, Ann, died in 2005. Prior to her death she did not need any money back from the parties to pay for her medical expenses.

Bob served as the executor of Ann's estate and in the final accounting in 2006 listed Ann's assets as including a $180,000 loan to Bob and Nancy. Bob testified he was obligated to pay Ann's estate back the loan amount, while Nancy testified repayment only became an issue after Bob's siblings discovered Ann's estate had almost no assets.

The distribution to Bob for his 45% share of Ann's estate when the loan was included as an estate asset was approximately $94,000.[6] Because this was less than the amount owed to the estate based on the loan, Bob and Nancy paid the balance back after cashing the CD so that Bob's sister and brother could receive their inheritance.

On July 17, 2014, Nancy filed for dissolution. At this time, Bob was seventy-five years old and Nancy was sixty-seven. Most of Bob's and Nancy's money was invested in the Locust Hill residence. During the pendency of the

---

[6] The actual figure was $94,326.89.

dissolution action, Bob and Nancy sold the Locust Hill property resulting in net proceeds of $119,000 which were held in escrow pending the family court's division. The family court ordered the parties to submit memoranda regarding how these proceeds should be divided. Bob argued that his $90,000 from the Limb Court property was invested in the Locust Hill property and that he was entitled to that amount and his inheritances which exceeded the total funds. Nancy raised alternative theories, including that Bob's nonmarital funds lost their nonmarital character through comingling, so the funds should be split equally, and that Bob was only entitled to $70,000 in nonmarital funds at most because he took out a $110,000 mortgage to pay his ex-wife for her share.

On August 21, 2017, a docket order was entered following the case management conference. The family court found in relevant part: "Based upon facts provided in memos, $90,000.00 home is nonmarital to [Bob]. Not sufficient evidence to find other inheritance money nonmarital, so same will be deemed marital unless new information is provided."

Both parties interpreted the family court's finding as an invitation to submit additional memoranda. Bob submitted a memorandum in which he tried to explain existing information more thoroughly. He explained that the $94,000 which he received from his mother's estate (but used toward paying back the loan) plus the $90,000 from the Limb Court property is nonmarital and, as it exceeds the

proceeds from the Locust Hill property, he is entitled to all the proceeds from the Locust Hill property.

In Nancy's supplemental memorandum she challenged the finding that the $90,000 equity Bob had in the Limb Court property was nonmarital property. She provided evidence that the $149,000 proceeds from the Limb Court property went into the parties' checking account and were subsequently used for both construction expenses and ordinary bills, arguing only approximately $28,800 of the proceeds could be traced to the Locust Hill property and, thus, the rest of it became marital in character. She continued to dispute that the $180,000 was a loan due the estate, arguing that if it had been a loan, Ann would have memorialized it as she did a $70,000 loan to them which was later forgiven and made a gift.

On April 12, 2018, the family court held the final hearing and heard testimony from the parties. Nancy and Bob testified consistently with their deposition testimony so we only address matters not previously discussed. Nancy testified she was forced to take her Social Security benefits early because they needed to pay bills for the house, and she continues to work because she cannot afford to retire on the $1,100 a month she receives in Social Security benefits. She acknowledged Bob had a nonmarital interest from the Limb Court property, denied he had any further nonmarital interest, but testified she thought it would be fair for her to receive half the total value of the house as she was working all these years of

their marriage while Bob was retired. Nancy explained she did not believe it was right that she had to help Bob pay his sister and brother after he wasted all of her money and Ann's money. Nancy recounted that after Ann died her daughter, Karen, did not understand why there was nothing left so Bob made up the amount his siblings were due out of the proceeds from their Limb Court house. Nancy explained she did not know where the money from Ann went as they had taken out a $250,000 construction loan, another $69,000 loan, and had lines of credit.

Bob testified that the proceeds from the sale of the Limb Court home went directly into the Locust Hill home, but also agreed that shortly thereafter they purchased a CD which was cashed out a year later to pay his siblings $93,000. Bob stated that the money from his mother was a loan that he did not have to pay back during her lifetime, but he did have to pay the estate, so his siblings could get their inheritance. Bob testified that he has a monthly income from retirement and Social Security of $2,800.

The findings of fact, conclusions of law, and decree of dissolution were entered on May 18, 2018. The family court stated it previously traced Bob's $90,000 nonmarital interest from the Limb Court property in its docket entry during the case management conference and concluded that the $180,000 loan and repayment had no nonmarital component. It concluded there was confusion over

the way the debt was paid, and Bob failed to prove that he should be awarded any amount as a nonmarital share.

The family court awarded Bob $90,000 as his nonmarital share, awarded Nancy a golf cart and $2,500 from the escrow to equalize the award of personal property, awarded Bob and Nancy their own retirement accounts, and determined that in awarding marital property in just proportions to award the remaining balance of the escrow amount of $27,304.85 to Nancy.

Both Bob and Nancy filed motions to alter, amend, or vacate. Nancy requested additional findings and argued that Bob did not adequately trace his nonmarital funds. She asked that she be awarded the agreed upon $2,500 to equalize personal property out of Bob's nonmarital funds. Alternatively, she requested a new trial. Bob argued that the family court's decision to award $29,804.85 to Nancy was unjust as this was his nonmarital property and she was wrongfully awarded a marital retirement account.

In the family court's order, it provided further factual findings and explanations of its actions but did not change its awards. As to its ruling that Bob had a $90,000 nonmarital interest in the proceeds from the marital residence, the family court stated this was adequately documented through Bob's divorce decree and canceled checks, along with the parties' testimony, noting that Nancy admitted

in her deposition that Bob received $90,000 from his first marital home and dissolution.

As to the money from Ann, which was received pursuant to the "loan" and from her estate, the family court found:

> the parties *jointly* made decisions regarding the money initially "loaned" to them from [Bob's] mother. There was testimony the money was both a gift and a loan to both parties while his mother was still alive. The only caveat being the parties pay her back if she were to need it. The parties invested that money, as well as some possible non-marital retirement of [Nancy], into the Locust Hill property. The parties did not believe they would ever have to repay his mother and it only became an issue upon his mother's death when his sibling became aware of the gift/loan. There was no written proof as to the original nature of the $180,000 they received from [Bob's] mother. [Bob] discussed it with his mother alone and [Nancy] relied on what he told her regarding the "loan." It is *clear* the parties did jointly invest in the Locust Hill property and did not come close to recouping the money invested in it. The Court does believe it to be inherently unfair to summarily rule [Bob] should receive the money he received from his mother's estate . . . . The parties made these choices together, co-mingled funds from various sources, and made bad decisions as to how to invest their money. Clearly, they poured money into the Locust Hill property which they did not recover. For the Court to then have [Bob] walk away with his claim of inheritance and his non-marital claim of $90,000 would be unconscionable. These parties are not young [Bob is 78, Nancy is 70] and for this Court to give what little remains of their funds to [Bob] would not be an equitable division.

On appeal, Bob argues that he showed by clear and convincing evidence that his nonmarital interest in the Locust Hill property exceeds its value, and he is entitled to have all the proceeds from it. He states he proved that the $180,000 loan which he repaid with exclusively nonmarital funds (his $90,000 from the previous property and the inheritance he was due from Ann) means that he is entitled to the proceeds.

Nancy argues that the docket order was a preliminary finding and the family court erred in not considering her additional proof and not determining that Bob's nonmarital interest in the proceeds of Limb Court was extinguished when the funds were comingled with marital funds and spent on other things besides just the construction of the Locust Hill home, including the purchase of a $100,000 CD.[7] She argues that her salary, the construction loan, and the proceeds from the sale of the Limb Court property were all placed in their joint account and, as a result, Bob failed to establish by clear and convincing evidence the presumption that the proceeds of the sale of the residence had a nonmarital component.

A family court has wide discretion in dividing marital property, which we review for abuse of discretion, while "[t]he question of whether an item is

---

[7] Nancy lists checks paid out of this checking account by referencing bank statements from July 26, 2005, and August 24, 2005, which are in the record. She argues that checks totaling $28,277.04 were paid that related to the construction or loan on the Locust Hill home, the $100,000 CD, credit card bills totaling $13,766.25, and other miscellaneous bills.

-10-

marital or nonmarital is reviewed under a two-tiered scrutiny in which the factual findings made by the court are reviewed under the clearly erroneous standard and the ultimate legal conclusion denominating the item as marital or nonmarital is reviewed de novo." *Smith v. Smith*, 235 S.W.3d 1, 6 (Ky.App. 2006) (footnote omitted).

"In a proceeding for dissolution of the marriage . . . the court shall assign each spouse's property to him [and] . . . also shall divide the marital property . . . in just proportions[.]" Kentucky Revised Statutes (KRS) 403.190(1). Property is not marital if it is "[p]roperty acquired in exchange for property acquired before the marriage[.]" KRS 403.190(2)(b).

> Under KRS 403.190, a trial court utilizes a three-step process to divide the parties' property: (1) the trial court first characterizes each item of property as marital or nonmarital; (2) the trial court then assigns each party's nonmarital property to that party; and (3) finally, the trial court equitably divides the marital property between the parties. An item of property will often consist of both nonmarital and marital components, and when this occurs, a trial court must determine the parties' separate nonmarital and marital shares or interests in the property on the basis of the evidence before the court. Neither title nor the form in which property is held determines the parties' interests in the property; rather, Kentucky courts have typically applied the "source of funds" rule to characterize property or to determine parties' nonmarital and marital interests in such property. The "source of funds rule" simply means that the character of the property, *i.e.*, whether it is marital, nonmarital, or both, is determined by the source of the funds used to acquire the property.

-11-

*Sexton v. Sexton*, 125 S.W.3d 258, 264-65 (Ky. 2004) (internal quotation marks and citations omitted). When a party claims that funds in property acquired during the marriage are nonmarital, that party bears the burden of proof in tracing the previously owned property into the present property. *Id.* at 266.

As to the factual finding that the family court made regarding Bob having a $90,000 nonmarital interest in the proceeds from the Locust Hill property, there is nothing clearly erroneous about the family court accepting Bob's evidence as to his prior divorce in which he was awarded a $90,000 interest in the Limb Court property as Nancy acknowledged. Whether this money was all directly invested in the Locust Hill property, or part of it was paid into construction bills for the house and another portion was indirectly invested by cashing the CD to replace funds expended to construct the home pursuant to Ann's "loan," it was adequately traced. Assigning this property as nonmarital was correct.

As to the division of the remaining marital funds, as provided in KRS 403.190(1), the family court "shall divide the marital property . . . in just proportions considering all relevant factors including: . . . (d) Economic circumstances of each spouse when the division of property is to become effective[.]" It is well established that "a 'just' division is not necessarily an equal division" and we will defer to the family court's broad discretion in dividing marital assets absent an abuse in that discretion. *Cobane v. Cobane*, 544 S.W.3d

-12-

672, 684 (Ky.App. 2018). Considering that Nancy testified that she was forced to continue working in her seventies because she could not afford to retire and there was very little marital property left to divide, the family court acted appropriately in awarding the balance to Nancy that had not already been awarded to her to equalize the property division.

Nancy also argues that the final judgment left out a $2,500 equalizing payment to her for personal property that the parties had agreed upon. However, as Bob points out, the family court order did award Nancy this $2,500. The issue is that Nancy wanted to be awarded the $2,500 out of Bob's nonmarital award, rather than out of the escrowed amount. The family court properly acted within its discretion in determining that Nancy would receive this amount out of the marital funds because the personal property that Bob received more of was marital property.

Accordingly, we affirm the family court's assignment and division of the assets in its decree of dissolution.

ALL CONCUR.

| BRIEFS FOR APPELLANT/CROSS-APPELLEE: | BRIEF FOR APPELLEE/CROSS-APPELLANT: |
|---|---|
| Jimmy Dale Williams<br>Richmond, Kentucky | Beverly Arvin Brewer<br>Jerry W. Gilbert<br>Richmond, Kentucky |